The next case on for argument is McCrobie v. Palisades Acquisition. Good morning, Mr. Miller. Good morning. May it please the court, the Rooker-Feldman doctrine is frequently misunderstood. And with all respect to the Western District of New York, we believe that the court below misunderstood it here. Mr. McCrobie's Fair Debt Collection Practices Act claims in no way constitute an appeal of a state court judgment. Mr. McCrobie is not trying to vacate a state court judgment, and Mr. McCrobie is not trying to challenge a state court judgment. And that's the only— As I understand it, you can correct me if I'm wrong, and I'm sure your adversary will, all Mr. McCrobie is doing is challenging or attacking under the Fair Debt Collection Practices Act how the judgment holder was going about collecting it. That's almost correct. So Mr. McCrobie actually alleges in his complaint that Palisades, one of the defendants here, was not actually the judgment holder. But you're correct insofar as the only violations of the FDCPA at issue here involve the enforcement of the judgment. The crux of the complaint is misrepresentation that happened in 2014. The state court judgment was entered in 2007, and it was obtained by a completely different company. It was obtained by a company called Centurion Capital. And then in 2014, Mr. McCrobie received an income execution from Hauslinger & Associates representing Palisades, you know, saying you must turn over part of your paycheck or we're going to go to your employer and garnish your wages. And you're saying that's not precluded by Rooker-Feldman? The Rooker-Feldman Doctrine is a very narrow doctrine. There have actually been three cases before the United States Supreme Court in the last 11 years dealing with the Rooker-Feldman Doctrine. And the theme of all three of those cases has been how narrow the Rooker-Feldman Doctrine is. The Rooker-Feldman Doctrine has nothing to do with the Constitution. It just comes from a statute that Congress passed that said that if the only federal court that can hear an appeal of a state court decision is the United States Supreme Court. So, yes, there is a state court judgment in the background. It's part of the factual background of the case. But Mr. McRobie is not using this FDCPA action to try and vacate it. In fact, Mr. McRobie has gone back to the Buffalo City Court to try to vacate that judgment because he wasn't properly served. But, you know, Mr. McRobie's- What is the status of that litigation? So the status of that litigation is that one Buffalo City Court judge had entered a decision vacating the judgment. And that judge vacated that decision on procedural grounds. The judge realized that Mr. McRobie's motion to vacate had actually been assigned to a different judge. And so there's going to be a hearing in front of the correct judge on November 17th, I believe. And this is a little to the side of your Rooker-Feldman argument. But in the back section of your brief, you say, I think, around page 8, Palisades never purchased the state court judgment from Centurion. And then later in the brief, the defendants used these New York state legal forms to steal from McRobie. What's the factual basis for those allegations? So the factual basis for that is that our co-counsel in Buffalo, who are representing Mr. McRobie in the state court case as well, went to Hauslinger and Associates and asked for documentation that Palisades had actually purchased this judgment from Centurion. And the documents that Hauslinger and Associates gave to them just did not support in any way that they had purchased the judgment from Centurion. They were dated before the judgment was entered. And it showed that Palisades had bought accounts from a completely different company called Great Seneca, not from Centurion. So the papers they produced just didn't make any sense. They didn't show in any way that they had purchased anything from Centurion. So that's the factual basis for that allegation. Or they gave you the wrong papers inadvertently, and there are real papers out there that show they have acquired it. But that's an issue to be resolved in your case, right? Yes, that's exactly right, Your Honor. I mean, that could turn out to be the case after discovery. But 12B6 motion and the allegations and plaintiff's complaint have to be accepted as true. And there is a reasonable basis for that. Even if Palisades purchased the judgment from Centurion, there are additional reasons under New York State law why they wouldn't be entitled to enforce the judgment. And these are laid out in the brief. First of all, Mr. McCroby was entitled to receive a notice of the assignment of the judgment from Centurion, the party that obtained the judgment. That never happened. We're not here on the merits of your claim, are we? I mean, we're just trying to figure out whether you are attacking the underlying judgment. And bottom line, you are saying your client is not attacking the underlying judgment. Whoever has legal right to it may enforce it subject to carrying it out correctly under collections procedures under New York law, right? That's correct, Your Honor. Okay. I think we have your argument, and that's great. Thank you. And you've reserved some time for rebuttal. And we'll hear from — is this Mr. Wharton? Mr. Arlio. Okay. You're second on the list, and you're arguing first, and that's absolutely fine. And the reason for that, Your Honor, is Mr. Wharton was — He got here first, right? Yeah. He was the attorney on the underlying case. So I'm probably going to pass off some of the arguments to him. But as I sat here and listened to Mr. Miller state that they are not challenging the state court judgment, only by the four corners of the First Amendment complaint, it's contradictory to what he said. That's a clear attack on that judgment. And when they filed the First Amendment complaint, it's a dissertation of how it was not properly served, and that courts enter default judgments when the cases aren't meritorious. I mean, clearly, that's an attack on the state court judgment. What we have here is a classic Rooker-Feldman. And as I'm writing my brief, in my head is the popular song, Love and Marriage. I mean, here, clearly, you can't have one without the other. Clearly, the underlying — I'm sorry, Your Honor. It may be debatable. Let me ask the question. In Love and Marriage or in this case? So I'm having difficulty seeing how this involves, how Rooker-Feldman is implicated here, because I don't think that this case is inviting district court review of the judgment. He's saying that Palisades didn't have the judgment, never purchased the state court judgment, and is attempting to steal or attempted to steal from Mr. McCrombie. That's one allegation. You could ask whether the good faith basis for that is really adequate. But then he goes on to say that there were other deficiencies in the collection process on the judgment. That's not an attack on the judgment. Well, respectfully, Your Honor, as I read the first amending complaint, specifically they're attacking that there was no service of process, there was incorrect service, and that the merits of the underlying judgment is improper because there's no merits to the case. So clearly he's attacking that state court judgment. So the other problem he has is now, because of the decision in the Buffalo court, this thing's going back to the Buffalo city court to determine issues regarding whether or not there was assignment under New York law. So here you're going to have a parallel litigation that the abstention doctrine clearly would prevent. But respectfully, here, had they stuck with the first complaint, Your Honor, I think we might have a little tougher argument. But they amended it and assaulted the judgment. So here clearly, as Judge Curtin correctly found, it's inextricably intertwined with that default judgment. How my client went about attempting to collect it and whether or not there was an assignment, that's clearly state law. And we've cited cases that say violations of state law are not per se liability under the FDCPA. So clearly here I believe Rooker-Feldman would apply. But the latter argument has nothing to do with Rooker-Feldman. Right. That's your defense, which with all due respect, we don't care about. Our only issue is whether this court, the federal courts have jurisdiction in this case, which has nothing to do with the state law issues. You may have perfect defenses. Yeah, there's an issue of materiality that's been raised in this appeal. A materiality of an FDCPA violation has to be material. So the issue as to whether or not violations of state court law constitute an FDCPA claim I believe are part of this appeal. I agree with Your Honor, the central decision here is the Rooker-Feldman doctrine. As Judge Curtin dismissed the case mainly upon that, he also dismissed it on Rule 8 and I believe Rule 15d concerning the – now if you even take a look at that second amended complaint, here's what they want. They want to go back and they want permission to now file a 248-page second amended complaint. There's only one central issue here as to whether or not they had a proper assignment. I could do that in five pages. What's going on in those other 243 pages? It's an assault on how these judgments are entered in the underlying court. Therefore, it's an attack upon the underlying judgment. Therefore, it's Rooker-Feldman. So at this point, I would yield to my— But the appellant has brought the matter to the state court, to the city court in Buffalo, right? As to the judgment that was entered, the default judgment that was entered. Right. So that's before that court. Right. The district court isn't being asked to intervene in that judgment directly. The district court is simply being asked to deal with the federal statute and whether that's been violated by the party that's attempting to enforce the judgment, right? Correct, Your Honor. So there's a very limited case in the federal court, even though it may take 248 pages for them to articulate what their complaint is. And as a district judge, I will tell you that I frown upon 248-page complaints. But that would be their right and would not necessarily be in violation of Rooker-Feldman for them to assert a federal claim in a federal court, right? They can do that as long as they don't attack the underlying judgment. And as I read the First Amendment complaint, it's a clear attack upon how that judgment was entered and the merits of that judgment. But are they asking the court to do something with respect to setting aside that judgment as opposed to saying the people who now claim to own that judgment are proceeding improperly and in violation of the law to collect it? So first question, are they claiming to ask the court to set aside that judgment? And where in the complaint do they do that? They do it in the First Amendment complaint by implication, by attacking the judgment on its own. No, no, no, no. Are they saying, and as one of the reliefs we want, we want that set aside? No, they're not asking for that expressly. No, they're saying we want damages because these people have done bad things in trying to collect it. Not expressly, but implicitly vis-a-vis the allegations of the all you need for Rooker-Feldman. It's my understanding, Your Honor, is an attack upon the state court judgment. Whether or not they're asking for relief from it, I don't believe affects Rooker-Feldman here. They may have a difference of opinion on that, and that's what we're here for. And your red light's on, so. Thank you, Your Honor. Your colleague argued to us. Thank you very much, Mr. Arleo. Mr. Wartman. Good morning, Your Honors. May it please the court, Scott Wartman for Palisades. I just want to point out you had a question regarding where they attack the judgments. In the appendix 217 to 218, the plaintiffs expressly invite the court to order, enjoin, and direct defendants to cease the initiation and enforcement of validly entered state court judgments. Of validly entered state court judgments. That's their phrase, yes. So they're acknowledging that it's validly entered. They just don't want it enforced through the process that they're complaining about. That's my understanding. And what I would say about Rooker-Feldman. So there's no Rooker-Feldman violation because they're not attacking the validity of the judgment. They're just attacking how it's being collected. Well, my understanding of Rooker-Feldman is that if you're attacking the enforcement's applicability under the four prongs of Rooker-Feldman, the judgment doesn't have to be overturned by the federal court for Rooker to apply. I mean, I could look at McEachin v. Brown. I could also look at the Hoblock decision, which was decided by this court in 2005, and that found that a federal suit can— We've had quite a bit of diverse prudence from the Supreme Court since 2005 on this, like Exxon and folks are saying, don't use this to dodge jurisdiction. I don't think that it's changed the Hoblock decision, though, as far as I'm concerned. A federal suit complains of injury from a state court judgment even if it appears to complain only of a third party's actions when the third party's actions are produced by a state court judgment and not simply ratified, acquiesced, and are left unpunished by it. But how are they alleging that the injuries here are caused by the judgment as opposed to attempts to enforce the judgment that are in violation of the FDCPA? They are alleging that the injuries stem directly from the judgments. This is a calculated attack on the state court judgment. I think that you could be injured by an illegal method used to enforce a judgment without the injuries are caused by that method, and you're also not inviting—you don't have to attack the validity of the judgment to say that those methods were improper. If your argument were true, I don't see how you could ever have an FDCPA action. Well, I would say that, again, I think you can have an FDCPA action. I mean to enforce a judgment, a court judgment. If you were to enforce the court judgment by violating the FDCPA, meaning there was some type of additional prong, such as through harassment or abuse or deceptive conduct, then, yes, there would be an FDCPA violation. Here, the entire issue is whether or not the judgment is valid, and here they waited— I mean, again, this is an issue I think that this court needs to examine, is they waited 8 1⁄2 years after entry of the default judgment, 8 months after filing the instant action, 10 months after learning about the income execution to simply bring the district court case. This isn't really about the FDCPA as much as it seems to be to me. Well, what efforts had been made to collect it before the period 10—before the acts that were then followed up 10 months later by a challenge? Well, based on what the record demonstrates, there was a notice filed in 2012 by Mr. Hauslinger demonstrating that Palisades was the owner of the debt. I'm not sure what's on the record as far as what other collection actions or efforts were taken, but there are no grounds. Wouldn't you agree that if no efforts were taken, it's perfectly within the right of any judgment debtor just to sit back and wait and see? I mean, in Vermont, at least, if 15 years runs and the judgment isn't renewed, they're home scot-free. So keep your mouth shut and hope these people go away. Well, if there's an income execution, I would typically say that you're not going to wait 10 months to do something about it. And if there's an income execution— But there's nothing wrong with waiting 10 months to do something. From a procedural and legal perspective, substantive— A judgment is good for 20 years in New York, so there's nothing wrong procedurally. But they do spend three and a half pages in even their first amending complaint attacking the judgment itself. Their first three and a half pages is all an attack. Consider the complaint perhaps a Brandeis brief on the problems that brought us here to then the collection issues. Isn't the right idea here to have the district court engage in discovery and then you make your summary judgment motion and you may resolve it right there, but at least there will be a record about the conduct of the defendant under the federal statute? I see that my time is running. Is it okay that I answer your question? Absolutely, yes. Great. I appreciate it. Thank you. So this is where it gets into some other grounds as well. And what this court can do is it's not only the Rooker-Feldman Doctrine that's at stake here. There's also other issues that were raised by defendants that's before this court, such as abstention. And I think abstention is fairly strong grounds considering there is parallel litigation taking place. And this court can make a finding of abstention. But didn't the district judge basically toss this, if you will, to use the jargon, on Rooker-Feldman and give little thought to the other issues that have all been raised? Your Honor, I respectfully disagree just in the sense that Judge Curtin actually says in his decision, and not to misquote him, I'll read his quotes, Judge Curtin refers to the issues, this is his quote, the issues regarding the validity of the underlying judgment, the subsequent assignments, and the garnishment order are all dependent for resolution on state law. And to me, again, that's an issue of abstention. I don't think Judge Curtin said that abstention, there are no grounds under abstention. It was just that there was a finding of Rooker-Feldman, meaning if there's a finding under 12b-1, you don't have to get to the 12b-6 prongs. But if this court is examining the entire case, which I believe the Second Circuit precedent demonstrates, then the 12b-6 aspects, such as abstention, such as the CPL arguments and abandonments, are also currently before this court. How much further discussion did Judge Curtin give with respect to those various issues? That we can then, as an appeals court, review. He gave a lot of discussion to it when referring to the, he also had to make a determination on the second amended complaint, and whether the second amended complaint should go forward, or whether it was futile. And the district judge, in coming to a determination, found that it was full of speculative arguments. Speculative arguments. And to me, that's, again, demonstrating a lack of plausibility. And if you can't plausibly state a cause of action under 12b-6, you don't have a claim. And again, I think it goes to, if I were again to look back over at abstention, there is the risk, a true risk, of piecemeal litigation. They're going before the Buffalo City Court in two weeks to argue the exact same points currently before the Second Circuit Court of Appeals.  Thank you, Your Honors. Thanks, Mr. Wardman. Mr. Miller. Your Honor, the- 248 pages. 248 pages is a long complaint. Most of that consists of- Where do you practice? I'm sorry? Where do you practice? What court? You don't practice in the Eastern District of New York? This is filed in the Western District of New York. That's a good idea. The 248 pages probably was overdoing it. Most of that consists of exhibits talking about something that we haven't really talked about here, talking about why ASTA, which is the parent corporation of Palisades, can be held liable for Palisades violations of the FDCPA. A lot of SEC filings and a lot of other information to show that there is a plausible basis for holding ASTA funding liable for Palisades actions. Now, as to the first few pages of the complaint, that is also probably not necessary to the complaint. It's background information on why it's important to enforce these provisions of the FDCPA in this context, in the context of default judgments. But the issues in the federal FDCPA case and the pending proceedings in the state court are completely different. The issues in state that they're going to be talking about on November 17th in state court involve whether Mr. McRobie was properly served in 2007. That's what... That's not an issue in this case. That is not an issue in this case. It is listed in the facts section, again, as factual background. Anything you want to respond to, given the arguments of your adversaries? The only other thing I would say is that the judgment didn't cause Mr. McRobie's injuries here. It's, you know, just because a judgment is there didn't harm, didn't send out the income execution. It was the alleged misrepresentations of defendants that caused Mr. McRobie's harm. Which may or may not be cognizable under the FDCPA, and that's an issue still open if the case goes back, right? That's correct. Good. Thank you. Thank you, all three of you. Helpful arguments, and we'll reserve decision and get you a decision shortly, I hope.